IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANDREA LEWIS, et al., etc.,   }
                              }
    Plaintiffs                }
                              }   CIVIL ACTION NO.
v.                            }   03-AR-2277-S
                              }
NEXTEL COMMUNICATIONS, INC.,  }
et al.,                       }
                              }
    Defendants.               }

FILED 03 SEP -4 PH 3:17

ENTERED
SEP - 4 2003

## MEMORANDUM OPINION

Before the court is "Plaintiffs' Response to Removal," deemed a motion to remand, filed by plaintiffs, Andrea Lewis and Trish Zruna, who sue on behalf of themselves and as representatives of a putative class of similarly situated individuals, (collectively "Lewis"). Defendants, Nextel Communications, Inc., et al. ("Nextel"), removed the action from the Circuit Court of Jefferson County, Bessemer Division, State of Alabama, to "the United States District Court for the Northern District of Alabama, *Northern* Division" on August 15, 2003. (Document #2)(emphasis added). Because this court has no Northern Division, the clerk properly assigned the case to the Southern Division where the Circuit Court of Jefferson County is located.

### Background

The removal is based on the alleged existence of a federal

question and 28 U.S.C. § 1331. Nextel contends that § 332 of the Federal Communications Act ("FCA"), 47 U.S.C. § 332, completely preempts Lewis's state-law claims because the claims, although artfully pleaded and only invoking state-law principles, are necessarily federal in character. Alternatively, Nextel asserts that Lewis's claims essentially challenge actions permitted under §§ 225(c) & (d)(3)(B) and 251(e)(2) and are indistinguishable from claims under §§ 201(b) and 207 of the FCA. Lewis's claims, therefore, allegedly raise a substantial federal question.

The FCA expressly preempts any state regulation of rates or market entry into telecommunications. See 47 U.S.C. § 332(c)(3)(A). Section 332(c)(3)(A) of the FCA states that "[n]o State or local government shall have any authority to regulate the entry of rates charged by any commercial mobile service, *except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile service.*" (emphasis added). In equally broad language, a savings clause provides that "[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.

## Analysis

Absent an express exception, "any civil action brought in a State court of which the district courts of the United States

2

have original jurisdiction, may be removed by the defendant or the defendants" to federal district court.  28 U.S.C. 1441(a). District courts "have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States."  28 U.S.C. 1331 (emphasis added).  When a district court has original jurisdiction of an action, it "shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. 1441(b).  Thus, the removal statute permits a defendant to remove to federal court whenever the action is one "arising under" federal law within the meaning of § 1331.

Although "arising under" jurisdiction as provided in the United States Constitution, Article III, § 2, extends to any case in which federal law potentially "forms an ingredient," *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 823 (1824), statutory "arising under" jurisdiction is more limited.  See *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8 & n.8 (1983).  A claim arises under federal law only if federal law "creates the cause of action." *Id.* at 9 (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). Generally, when both state and federal law create a cause of action, a plaintiff, as "master of the claim," may obtain federal jurisdiction by raising the federal claim or, conversely, "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  In the

3

latter case, it logically follows that any remedy under federal law is waived.

The well-pleaded-complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiffs properly pleaded complaint," reflects these principles. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). Accordingly, a defendant cannot remove a case as "arising under" federal law based on a federal defense, including a defense that the plaintiff's state-law claim is preempted, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998); *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)(preemption is ordinarily a defense that does not appear on the face of well-pleaded complaint). A corollary to the well-pleaded-complaint rule is that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet*, 522 U.S. at 475; *Caterpillar*, 482 U.S. at 393. There is, therefore, a recognized exception to the well-pleaded-complaint rule -- complete preemption, sometimes called field preemption.

Complete preemption occurs when "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for

4

purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (citing *Met. Life*, 481 U.S. at 65). Thereafter, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim." *Id*. The doctrine of complete preemption is extremely rare. Most cases analyzing complete preemption arise under either § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, or § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, which is modeled on § 301 of the LMRA. Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 TEX. L. REV. 1781, 1797 (1998). The National Bank Act ("NBA") is now fertile ground for analysis under this concept because this past term the Supreme Court held that suits for usury against a national bank are completely preempted by 12 U.S.C. § 86. *Beneficial Nat'l Bank v. Anderson*, 123 S. Ct. 2058 (2003).

Analysis of what other statutes might have the requisite super-preemptive force to confer subject-matter jurisdiction on the district courts is woefully lacking. Various tests have been employed. *See BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 856-57 (11th Cir. 1999) (describing the two-part and three-part tests utilized by other circuit courts). The Eleventh Circuit, however, has refused to adopt any particular approach, concluding that the focus is whether congressional intent to provide an exclusive federal

5

cause of action exists:

> These cases reveal a varying emphasis on such questions as whether the state claim is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions. Despite the variations, however, "all [the tests] focus on a similar goal: to determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to remove the adjudiction of the cause of action to federal court..."

*BLAB*, 182 F.3d at 857. The Supreme Court likewise focuses the inquiry on congressional intent. *Beneficial*, 123 S. Ct. at 2064 ("Only if Congress intended [the usury provisions of the NBA] to provide the exclusive cause of action for usury claims against national banks" would complete preemption occur). The question here, therefore, is whether Congress intended 47 U.S.C. § 332(c)(3)(A) to provide the exclusive cause of action.

Nextel correctly informs the court that the Seventh Circuit holds that Congress intended complete preemption when it enacted § 332(c)(3)(A). *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986-87 (7th Cir.2000). In *Bastien*, a dissatisfied customer sued his cellular telephone services provider in state court for breach of contract and consumer fraud. *Id.* at 985-86. The *Bastien* court found "[t]here can be no doubt that Congress intended complete preemption when it said 'no State or local

6

government shall have *any* authority to regulate the entry of or the rates charged by an commercial mobile service.'" *Id.* at 986-87. (emphasis original). This conclusion was followed with an analysis of the conflict between the all-encompassing or "super-duper" preemptive force of § 332(c)(3)(A) and the FCA's savings clause, 47 U.S.C. § 414. The savings clause provides that "[n]othing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are *in addition to such remedies*." 47 U.S.C. § 414 (emphasis added). The Seventh Circuit determined that "the savings clause appears to encompass most actions, but it is well established that such cannot be true." 205 F.3d at 987 (citing *AT&T Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 228 (1998)). Relying heavily on the Supreme Court's *Central Office* decision, the Seventh Circuit held that cases in the exclusively federal sphere -- those involving the entry of or rates charged--are completely preempted. 205 F.3d at 987-88. *Central Office*, however, dealt with ordinary preemption pursuant to § 203, not with complete preemption.

*Central Office* was an 8-0 decision authored by Justice Scalia. 524 U.S. at 215. His dissent in *Beneficial*, joined by Justice Thomas, calls into question the Seventh Circuit's reliance on *Central Office* for the proposition that the FCA is a super-preemption statute. 123 S. Ct. 2064-70 (J. Scalia,

7

dissenting). In *Beneficial*, the dissent finds that "the holding cannot be squared with the bedrock principles of removal jurisdiction." *Id*. at 2068. Further, the dissent argues that only the LMRA and the statutes modeled after it, i.e. ERISA, have the "'unique pre-emptive force' that (quite illogically) suspends the normal rules of removal jurisdiction." *Id*. at 2070. Extrapolating from the ordinary preemption analysis in *Central Office* to find complete preemption appears suspect, as reading tea leaves often is.

    Regardless of the Seventh Circuit's take on the FCA, this court is bound by a dispositive, post-*Bastien* case from the Eleventh Circuit. In *Smith v. GTE Corp.*, 236 F.3d 1292 (11th Cir. 2001), putative class representatives attempted to enjoin GTE. Initially, they posited jurisdiction upon diversity, but the court found the amount in controversy to be well below $75,000. 236 F.3d at 1309. In an interesting twist, plaintiffs retreated to the argument that their state-law claims against GTE for fraud, unjust enrichment, breach of contract, and breach of warranty were completely preempted by § 207 of the FCA and, therefore, that the court had federal-question jurisdiction. *Id*. at 1298. The Eleventh Circuit noted that the FCA's savings clause, 47 U.S.C. § 414, contemplates the application of state law and the exercise of state-court jurisdiction. *Id*. at 1313. If there is state-court jurisdiction the jurisdiction cannot be

8

exclusively federal. The court held that the existence of the savings clause "counsels against a conclusion that the purpose behind the ... [FCA] was to replicate the 'unique preemptive force' of the LMRA and ERISA." *Id.* (citing *BLAB*, 182 F.3d at 857-58). The savings clause also applies to § 332. The Eleventh Circuit's analysis that the savings clause evidences Congress's intent to save state-law actions precludes complete preemptio within the Eleventh Circuit and thus in this case.

This conclusion is bolstered by the plain language of § 332, which excludes from its preemptive force state regulation of "the other terms and conditions" of commercial mobile service. 47 U.S.C. § 332(c)(3)(A). Permitting states to regulate "other terms and conditions" strongly suggests that Congress did not intend complete preemption. *See Bryceland v. AT&T Corp.*, 122 F.Supp.2d 703, 707 n. 3 (N.D.Tex.2000). Further, the congressional record indicates that claims like Lewis's are included within the definition of "terms and conditions":

> [S]uch matters as customer billing information and practices and billing disputes and other consumer protections matters, facilities siting issues (e.g.zoning); transfers of control; the bundling of services and equipment; and the requirement that carriers make capacity available on a wholesale basis or such other matters as fall within a state's lawful authority. This list is intended to be illustrative only and not meant to preclude other matters generally understood to fall under "terms and conditions".

H.R.Rep. No. 103-111, 103d Cong., 1st Sess. 211, 261, reprinted in 1993 U.S.C.C.A.N. 378, 588. Contrary to Nextel's position,

Congress intended 47 U.S.C. § 332(c)(3)(A) to provide an *additional* cause of action. Lewis's action is not completely preempted.

Nextel's fallback position is that the FCA permits its conduct. That argument, however, if true, is a defense. As discussed above, a defendant cannot remove a case as "arising under" federal law based on a federal defense, including a defense that the plaintiff's state-law claim is preempted. *Rivet*, 522 U.S. at 475. Similarly, the argument that Lewis's claims are indistinguishable from claims under §§ 201(b) and 207 of the FCA does not raise a substantial federal question. The FCA's savings clause makes clear that the causes of action in the federal statute are cumulative to available state-law actions. Lewis has obviously decided to forego the remedies provided in the FCA. The availability of those remedies does not convert every state-law action into one substantially federal in character. In other words, at the risk of repetition, the FCA does not completely preempt state law.

Finally, it is fundamental that the removal statutes, 28 U.S.C. §§ 1441-1452, be strictly construed, with doubts resolved against removal. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 107-09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941)). This principle simply reinforces this court's unwillingness to expand its

removal jurisdiction beyond what Congress, or what the Supreme Court and the Eleventh Circuit, have unambiguously provided.

## Conclusion

The court will, by separate order, grant Lewis's motion to remand this action to the Circuit Court of Jefferson County.

DONE this ___4th___ day of September, 2003.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE